The next argument today is in docket number 22-1568 in Re Deng. Mr. Gardy, whenever you're ready. Your honors, may it please the court. The issues before us today involve some significant broad aspects of obviousness law as applied to advanced materials. So, these issues from the applicant's perspective impact not just this case, but we're seeing these issues repeatedly in the patent office. And one significant objective of the applicant is to get these issues clarified. So that our dealings with the patent office, we think will be on a fairer and reasonable grounds for proceeding. Just this last Friday, a colleague and I filed a reply brief in another case for this applicant to the PTAB involving virtually identical legal issues. So, three overarching legal issues here are the standards for motivation to combine, whether or not the teachings of the cited references provide a reasonable expectation of success, and thirdly, on the application of inherency in meeting the claim limitations. And maybe I'll start with inherency because this is a significant issue in terms of how the PTO has been applying this. And here, the technology is lithium-ion batteries. And admittedly, the technology is very complex. This patent application is directed toward silicon suboxide, a new material being applied for the negative electrode or anode for rechargeable batteries. So, the claims include a feature related to the cycling properties of the battery, which is an important characteristic. For our rechargeable batteries, for them to have value, they need to recharge a reasonable number of times. So, each cycle corresponds to a discharge and recharge cycle of the battery. For testing purposes, it's performed using what we could call accelerated wear testing, with an orderly procedure, of course. In use, discharge and charging is more sporadic by the user, but for testing purposes, you discharge and recharge at certain rates and look at the degradation of the battery capacity over time. So, under inherency, the law was anchored in anticipation and very reasonable. You know, Enri Bass describes, you know, the circumstances where you discover, you know, some new property of something that's known and you shouldn't be able to get a patent claim for just understanding something more about something that's old. So, then when you apply this in obviousness, it becomes pretty much right away murkier because you're combining different references with different teachings. So, under those circumstances, this court has, you know, in Southwire, explained that, you know, for inherency to apply in the context of obviousness, the property still needs to necessarily follow. So... Isn't it true, though, in the patent office examination context? Yes. Right? And that's what, you know, we're talking about for Best and Southwire, that this court created a rule that there's going to be burden shifting when all of the elements in the claim are taught in a reference or would have been obvious to put together based on what's in the art. And any functional limitations or property limitations that are additionally cited in the claim are presumed to be due to all the different elements that reside in the claim that have been found to be obvious. And then that puts the burden on the applicant. Again, we're just talking about the PTO context. Right. To come forward with some information to explain why it's not necessarily so that the functional limitation is just a natural result of the recited structural elements in the claim. That's my understanding of what Best and Southwire are getting at. It's a burden shifting. The PTO, you know, they don't have laboratories where they can run tests and things like that. The applicants, however, can always submit a declaration, maybe by the inventor or by an expert, that would simply rebut the prima facie case here and saying, no, these discharge capacity characteristics recited in these claims are not a result of all these different limitations about the negative electrode. In fact, there's many other things that contribute to this particular characteristic that I'm claiming, that I'm including in the claim. So in that sense, that's how the burden shifting program works under Best and Southwire. What is wrong with my understanding of the law? The basic outline that you described is fine. The problem is, in this case, you know, the examiner and the board will say, you know, show us that the battery of Nakanishi, Miyagi, and Pli does not work. So I'll ask the examiner, and, you know, what battery are you talking about? In some sense, perhaps if the motivation to combine and the reasonable expectation of success were there, then I would know what battery that is. The problem is Miyagi is 230 pages, mostly irrelevant teachings. But the focus, the focal point of the inquiry is once you accept that there is a motivation to combine with a reasonable expectation of success of these three references, Nakanishi, Miyagi, and Pli, what you would end up with is a lithium-ion battery that has all of the structural elements that you've recited in your claim. That's the battery that you focus on. And then the next question is, okay, is there some problem? Is there some scientific problem that it's wrong to simply presume that the discharge capacity characteristics that are likewise recited in the claim don't naturally flow from that ion battery? Well, we've already presented examples showing that it works, right? So they're, in essence, saying, sure, it doesn't work. So, you know, part of the question is, have we put enough features in the claim? And maybe that's unclear in this case. If there were motivation to combine, which we don't think is even close, and if there were a reasonable expectation of success, which we think is clearly not there, you know, I view in my work in the patent office, I don't view the examiner as an adversary. I view that we're together searching for the truth. You know, I do a lot of work on complex materials. It is very complicated. I'm sympathetic to them. In this case, in particular, there's very little prior art because very few people in the world can cycle these materials at all. It's a difficult issue. So I want to work with them to arrive at something that I think is fair and reasonable but will provide the protection my client needs to conduct their business. So in that context, I need a reasonable framework for those discussions. And in this case, Miyagi, he clearly is not relevant. So, you know, I'm happy to have the conversation. So is your argument and your objection really about inherency? See, I thought you just basically agreed that the framework for inherency is okay. It sounds like your argument with this is with the motivation to combine and use Miyagi. But you started off on inherency. Because the PTO is using inherency to avoid considering the reasonable expectation of success. They say it's clearly successful because, well, you got it to work. Therefore, we find the pieces. We put them together. There's a reasonable expectation. Do you have an argument that these pieces aren't present in these three pieces of art? The pieces are there, but KSR said the pieces are almost always there, right? How does that help you? So what's your argument then? If the pieces are there and you can't prove that the pieces don't produce the result you have because it's inherent, then is your argument really about motivation to combine? And why didn't you start there? Because we're constantly seeing inherency being used as a reason to not consider a reasonable expectation of success. We don't think inherency should be used at all in these cases, to be honest. They're not relevant. You're putting together five pieces pulled out of references. Well, I don't think that's the law, is it? I mean, I know a lot of people would not like us to allow inherency and obviousness determinations, but we do. I don't mind it at all, and I think it's not needed because if there's a reasonable expectation of success when you're combining three or four references, pulling out different pieces, if there's a reasonable expectation of success, I think inherency follows, right? Because your own examples prove that it works. The real issue then should be requiring a finding of a reasonable expectation of success. Did the board make a reasonable expectation of success finding here? They did, but it was very perfunctory. They say all the pieces are there, but then there was no motivation to combine. Well, what is the piece that you're bothered by in particular that it wouldn't be – There's no reasonable expectation of success for having a negative electrode thickness of 25 microns? Based on Miyagi's teaching that there's a certain range of thickness for a negative electrode that you would want, which encompasses 25 microns? Miyagi is mostly focused on carbon electrodes, graphite electrodes. Graphite is an electrical conductor. So the ranges of electrode thickness there are not directly relevant without more for silicon suboxide, which is an electrical insulator. Well, that sounds like an entirely different argument altogether. I mean, it sounds like you're arguing Miyagi isn't even relevant or analogous at all. Correct. Miyagi is – that's the fundamental issue. But that's not what you argued to us. Pardon me? Go ahead. I apologize if it was confusing. But the issue is you shouldn't get to inherency if there's not a reasonable expectation of success and a motivation to combine. So I think you're right that inherency is applicable, but only when those other circumstances are met. So normally you shouldn't even reach that because it's clearly inherent once you have a reasonable expectation of success. So that's the real shortcoming here. I'm already into the rest of my time. Okay. Well, we'll save your remaining time for if you'd like. Okay. Thank you. All right. Let's hear from the PTO. Dr. Kastan. Sure. Mr. is good too. May it please the court. I want to just talk about the motivation to combine, which I think is the important thing here. We have something – the claimed battery is very similar to Nakanishi. The only thing is Nakanishi doesn't tell you a thickness. So if you're going to make the Nakanishi battery, you're going to have to figure out what thickness to use. Miyagi says thickness is important. That's already a result-effective variable. So now all we have is the claims recite at least about 25 microns, a very broad range. And if you're making Nakanishi, you know you need to experiment with the thickness because Nakanishi doesn't tell you a thickness. So Miyagi suggests you should experiment with it and even suggests thicknesses within the claimed range. That I think should be enough for the motivation to combine because you're not even – it's not a case where we're trying to not use the Nakanishi thickness that's there and we're saying you would have modified it based on Miyagi. Nakanishi leaves that open. You have to figure that out. So I think that's sort of a simple motivation. The opposing counsel says Miyagi's negative electrode is made out of different material than the material that the primary reference's negative electrode is made out of. So again, I would think that would be a better argument if Nakanishi had a different thickness. And the question is would you look to Miyagi to change Nakanishi's thickness? But Nakanishi doesn't give you a thickness. So you're going to need to experiment. Miyagi is just telling you that thickness matters. These are some of the important thicknesses. And given the breadth of the claimed range, at least about 25 microns, and there's no teaching away – they note that PLE has a smaller one, but they're not claiming it's a teaching away, then you're going to have to experiment. And that's what Miyagi tells you to experiment. And it even tells you some of the thicknesses where you might land in the claimed range. So I think that's – given how close the prior art is, I think that's enough. The other question was inherency, but I think in the end we came out that the inherency isn't really what's at issue here. And if it would have been obvious to combine – if there's a reasonable expectation of success, then the inherency law that this court has been applying is correctly applied here. So I'm not sure that's even relevant. In Ray Best and Southwire, were either of those a 103, or were they both 102s? Southwire is a 103. So it even has – So you had to combine the teachings of Northwire and Southwire. Summers in view of Dow was Southwire. So that was – and the court said that that was enough to set the inherency. So that was a 103. So I think that's on point. And, in fact, Southwire also had – it doesn't matter if it's inherency under 102 or prima facie obviousness under 103. So I think Southwire is pretty explicit that inherency applies in these kinds of obviousness cases. Was the reasonable expectation of success analysis by the board perfunctory? I didn't think so. I mean, I think what KSR teaches us is the problem that will render something obvious doesn't have to be the problem that the patentee sets out. So it may be – they're saying you wouldn't know you'd have exactly these cycling parameters. But that's not the test under KSR. Under KSR, if it would have been obvious to combine them for any reason, then it's obvious. And that – they've never argued that we wouldn't expect some amount of success in that. They're saying you wouldn't expect maybe the amount of success they're claiming. But they haven't argued unexpected results, which is why the board never addressed that. So it's just – under KSR, the question is, is there any motivation to combine the structural limitations as they did? And the answer is yes. The functional limitations we assume are inherent because we at the PTO, as Your Honor noted, can't run the tests. So we just have to assume that if you meet the structural limitations, you get the functional limitations. And so that's why it would have been obvious. I don't know if this court has any further questions. If not, I'm happy to cede my time. Okay, thank you. Dardy, you still have a minute. Okay, I'd like to go back to the motivation to combine issue. So Miyagi, you know, is a reference directed toward electrolytes. And it's not really directed toward the structure of, you know, the electrodes, especially for silicon-based materials. So, I mean, the only – there's thousands of battery references. So, you know, a person of ordinary skill in the art should not be clairvoyant and say there's some relevance here. I mean, so when you say that Nakanishi doesn't teach the electrode thickness, that's because generally when you're trying to optimize just the performance to see if it will work at all, the cycle, you make a very thin electrode because – and you make it more dilute concentrations of the active material so that it won't fail quickly. So if you're trying to cycle it, you test one parameter by not challenging all the other parameters. When you make the electrode thicker, you know, you have these materials that are expanding several times their size and shrinking again. The thicker you make the electrode, the much more likely it is that it will destroy the electrode. It will delaminate from the current collector. The impedance will be too high because you're moving ions and electrons. So it's a very complex integrated system that's not just, you know, looking – you're not, you know, building a house. These things are active in there. You're pulling lithium atoms in and out of a lattice. You're moving electrons through the system. Mr. Daugherty, I appreciate all of this, but, I mean, this is a fact-finding. This is a pure fact-finding, and it's very hard without, you know, declaration evidence for this court to review fact-findings like that so long as, you know, we can say they're supported by substantial evidence. I understand, but I think the legal shortcomings are what stand out here because there was no motivation to combine, and there was no reasonable expectation of success. Okay, thank you very much. The case is submitted.